UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 17 B 242 |
| JOSEPH A. SANFRATELLO, ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| _____ ) | |
| ) | |
| OLD SECOND NATIONAL BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | Adv. No. 17 A 206 |
| ) | |
| v. ) | |
| ) | Judge Pamela S. Hollis |
| JOSEPH A. SANFRATELLO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the court following trial on the complaint filed by Old Second National Bank ("Bank" or "Plaintiff") against Joseph A. Sanfratello ("Sanfratello" or "Defendant"). In its complaint, the Bank sought denial of Sanfratello's discharge in two counts. Count I, brought under 11 U.S.C. § 727(a)(2)(A), alleged that Sanfratello "transferred, or permitted to be transferred, approximately $233,000 with the intent to hinder, delay, or defraud his creditors." Count II, brought under 11 U.S.C. § 727(a)(4), alleged that Sanfratello "knowingly and fraudulently, and in connection with this bankruptcy case, made material omissions, false oaths and accounts in his Schedules and SOFA, including, but not limited to, the failure to disclose the existence of his two checking accounts at JPMorgan Chase Bank."

A trial was held on March 5, 2018. After the parties rested, the court noted that the Bank had introduced no evidence regarding fraudulent transfers, which had been the basis for Count I.

Instead, the Bank's evidence centered on concealment, which had not been alleged in the complaint and is a different basis for denial of discharge under § 727(a)(2)(A).

The Bank made an oral motion to amend its complaint. The court suggested that the motion should be put in writing. Although the Bank's attorney stated that he would "get my motion to amend on file at the same time as my post-trial brief," Tr. at 82, lines 11-13, the Bank filed an amended complaint on April 2 without filing a motion to amend and without leave of court.

As for Count II, the Bank's attorney stated at the close of evidence that Plaintiff would not seek denial of discharge pursuant to 11 U.S.C. § 727(a)(4). Indeed, the amended complaint contains only Count I, and in its post-trial brief, the Bank stated that it voluntarily dismissed Count II.

Aside from the deletion of Count II, the only change from the original to the proposed amended complaint appears to be the following additional paragraph in Count I:

> In the twelve months preceding the Petition Date, defendant concealed the Funds with the intent to hinder, delay, or defraud his creditors, including Old Second, by failing to produce financial documents, or provide testimony, required by the Citation.

Amended Complaint, ¶ 23.

For all of the reasons stated below, the oral motion to amend the complaint is denied. Judgment will be entered in favor of Defendant Joseph Sanfratello on Count I. The court will dismiss Count II.

## FINDINGS OF FACT

Joseph Sanfratello grew up in the restaurant industry, started a pizza franchise business, and has owned restaurants throughout his career. Tr. at 12. He also has a business degree from DePaul University. Tr. at 11.

2

He borrowed money from Old Second National Bank, the loan went into default, and the Bank sued him, obtaining a judgment in the amount of $34,281.28. Tr. at 12; Pl. Ex. A.

The Bank had an alias Citation to Discover Assets issued on Sanfratello, requiring him to appear in Will County Court on June 1, 2015. Pl. Ex. A.[1] He knew that the citation concerned the Bank, and that it was trying to collect money from him. Tr. at 13. Although the Bank submitted the alias citation and certificate of service as Exhibit A, it did not include a copy of the income asset form or citation rider that was supposedly attached.

Sanfratello did not appear in court on June 1. The Will County judge issued a Rule to Show Cause ordering Sanfratello to appear on August 3, 2015. Pl. Ex. B.

Sanfratello appeared in court on August 3. Tr. at 16. He agreed to a continuation of the citation to September 14, and understood that he was supposed to furnish financial documents and an affidavit to the Bank's attorney. Tr. at 17; Pl. Ex. C.

Sometime in the late summer or early fall of 2015, Sanfratello moved from Crete, Illinois to Frankfort, Illinois. Tr. at 55.

On October 5, 2015, the Bank's attorneys submitted a warrant application for Sanfratello's arrest. Pl. Ex. E. The Will County court ordered a warrant on the same date, and he was arrested. He posted bond of $500. Tr. at 19. No testimony was heard as to why the Bank made the application or why the warrant was issued, nor does the application submitted as Exhibit E answer these questions. The Bank filed a motion for turnover several weeks later, and alleged that Sanfratello did not appear in court on September 14 or October 5. Pl. Ex. G.

---

[1] The certificate of service attached to the citation indicates that it was served on April 14, 2015, although the process server indicated that a "summons/complaint" was served, not a citation. Pl. Ex. A. Sanfratello initially testified that he did not recall receiving the citation. "This one in particular I don't [recall receiving]. There was a few that I did not get." Tr. at 12, lines 23-24. After being directed to the certificate of service, Sanfratello testified that he did remember receiving it.

3

Sanfratello next appeared in court on December 10, 2015. Although he was present, the Bank's attorneys were not. The judge set the case over to January 4, 2016. Tr. at 19; Pl. Ex. F. When asked at this trial whether he had been prepared to answer questions if opposing counsel had been present, Sanfratello answered, "No." Tr. at 52, line 2.

From mid-December 2015 through mid-February 2016, Sanfratello was in Arizona opening a franchise location. Tr. at 20-21. So he did not appear in court on January 4, and a body writ issued in the amount of $1,000. Tr. at 21-22; Pl. Ex. H. At some point after he returned to Illinois from Arizona, and before June 2016, Sanfratello was arrested. Tr. at 24.

He appeared in court on June 22, 2016. Both he and his wife were given copies of the riders to the citation as well as income/asset affidavits; they had not yet turned over tax returns, bank statements or the affidavit. Tr. at 25. The Sanfratellos were ordered to do so by the next court date of July 27, 2016. Pl. Ex. K.

The Sanfratellos hired an attorney, Timothy Edmier. On July 26, 2016, Edmier sent the following documents to the Bank's attorney:

1. Debtor's Income and Asset Forms;

2. Debtors' 2013, 2014 and 2015 Federal and State Tax Returns;

3. A copy of Sanfratello's paycheck with a payroll deduction evidencing that his wages were being garnished by another judgment creditor;

4. An Illinois Department of Revenue tax lien; and

5. An IRS document evidencing taxes owed in excess of $60,000.

Pl. Ex. L.

The next day, the Will County court continued the citation proceedings by agreement of the parties. Although Sanfratello was not present, his attendance was not required. Tr. at 27.

Pursuant to the agreed order continuing the citation, depositions were to be conducted on both Sanfratellos prior to the next court date of September 9, 2016. Pl. Ex. M.

This was the first time that a deposition is mentioned in one of the Will County court orders. The Bank's attorney asked Sanfratello at trial whether it had been trying to set up a deposition for months:

> Q: And at that time [July 2016] we were trying to get a deposition set up to get you to testify; is that right?
>
> A: I don't know.
>
> Q: Okay. Well, there was a –
>
> A: I don't understand the question.
>
> Q: Okay. So at that point you hadn't yet testified, but that was your testimony today. But it was – my partner was trying to get that set up this whole time; wasn't he? He was trying to get you to sit –
>
> A: I don't know what he was doing.

Tr. at 26, lines 3-14.

The Bank's attorneys noticed a deposition for Sanfratello on September 1, 2016. Pl. Ex. N. They mailed a copy of the deposition notice to Sanfratello, but not to attorney Timothy Edmier. Id.; Tr. at 27.

Sanfratello was asked at trial whether he appeared for the September 1 deposition.

> Q: But you didn't show up on September 1, 2016, to my office, did you?
>
> A: I was there two times. I don't recall the dates.

Tr. at 27, lines 11-14.

The Sanfratellos did not appear in court on September 9. The Will County court issued a Rule to Show Cause ordering them to appear on October 18. Pl. Ex. O.

5

At the October 18 hearing, Sanfratello appeared. The Will County judge asked why it was taking so long to complete the citation. Sanfratello's lawyer advised the court that there had been a miscommunication between her office and Sanfratello's bankruptcy counsel over who would be covering the citation. "I certainly could present my client for deposition now that we know it will be my office representing him in the deposition rather than bankruptcy counsel." Pl. Ex. P, pp. 3-4. In response, the Bank's attorney asked that Sanfratello be held in contempt and taken into custody.

After asking about the nature of Sanfratello's business, the Will County judge noted that "that kind of situation can present I think some rather extensive documentation issues, but I don't think Mr. Sanfratello has made much of an effort here to get through this." Pl. Ex. P., p. 9. The judge then indicated that he wanted this matter to move forward, and was inclined to award fees to the Bank. Meanwhile, the rule to show cause was continued to November 9, 2016. Sanfratello was again ordered to present himself for a deposition. Pl. Ex. Q.

The Bank noticed another deposition for November 2. This time it served Sanfratello's attorney with a copy of the notice. Pl. Ex. R. Sanfratello appeared for his deposition on November 2 and testified. Tr. at 32. The Bank's attorney had all the financial documents that Sanfratello had submitted, and "spent a fair amount of time" asking him questions about his financial transactions. Tr. at 33, line 15.

After the deposition, the Bank moved for an order of contempt against Sanfratello. Pl. Ex. S. The motion was noticed for November 9, and then continued to December 5, 2016, because of the judge's absence. Pl. Ex. T.

Sanfratello attended court on December 5. The Bank asked for sanctions, and after hearing from Sanfratello's counsel, the judge stated:

6

> This is one of those situations that is going to probably take an evidentiary
> hearing as to his willfulness towards violating the order. I mean, on its face, yeah,
> it looks like he violated the order, but in terms of an appropriate attempt . . . In
> terms of his willfulness, what happened here, so –

Pl. Ex. U, p. 5. The Bank's attorney continued to ask for attorney's fees, since he had filed his affidavit in support, and the court awarded $2,250. When Sanfratello's attorney asked for time to review the facts, the judge said, "Well, I tell you what. I am going to enter the order, and if – if you want to present a motion to vacate once you talk to him?" Id. at p. 9.

The citation hearing was continued to January 26, 2017. Sanfratello did not appear, because he had filed for relief under Chapter 7 three weeks earlier on January 5, 2017. Tr. at 41-42.

## CONCLUSIONS OF LAW

<u>The Issue of Concealment was not Tried by Consent, Therefore the Bank May Not File an Amended Complaint.</u>

Although this court invited the Bank to file a written motion to amend its complaint rather than rely on the oral motion made at the close of trial, Sanfratello conceded in his post-trial brief that a written motion was unnecessary. Consequently, despite the lack of a written motion, the court will consider the question of whether the Bank may amend its complaint to plead concealment with intent to hinder, delay or defraud.

Fed. R. Civ. P. 15, made applicable here by Fed. R. Bankr. P. 7015, contemplates that parties may make amendments to pleadings before, during and after trial. The relevant section of the rule is subsection (b):

> (b) **Amendments During and After Trial.**
>
> > (1) **Based on an Objection at Trial.** If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would

7

> prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.
>
> **(2) For Issues Tried by Consent.** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move-- at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Sanfratello did not object during the trial that evidence of concealment was not within the issues raised in the pleadings. It was only after the parties rested, and the court asked about it, that the issue was raised. Therefore, since an amendment would not be based on an objection at trial, only Rule 15(b)(2) could apply here.

Rule 15(b)(2) requires that concealment was tried by either express or implied consent. If concealment was tried by consent, then "it must be treated in all respects as if raised in the pleadings." As the Rule clearly states, "failure to amend does not affect the result of the trial of that issue." But if concealment was not tried by consent, then the complaint cannot be amended after trial. It is not the ruling on amendment that makes the difference, but whether the issue was tried by consent.

According to the Seventh Circuit, "[t]he standard for a motion under Rule 15(b)(2) is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment. A district court is well within its discretion to deny a motion seeking to add a new theory of liability if the defendant has not consented to it." Reynolds v. Tangherlini, 737 F. 3rd 1093, 1106 (7th Cir. 2013) (citations and quotations omitted).

Counsel for Sanfratello stated at the conclusion of the trial that if concealment had been pled in the complaint, "we could have brought in evidence of what the bank knew . . . . [W]e

8

could have brought in months ago documents that say the loan application or all the documents that were submitted with that letter from the lawyer. I could have asked him what he testified about at his deposition, and I didn't." Tr. at 78, lines 22-23 and at 79, lines 6-10.

Sanfratello continued this argument in his post-trial brief. "Defendant did not have an opportunity to take discovery into what documentation Plaintiff obtained from Defendant during the citation process, nor what the Plaintiff bank and its officers knew about the Defendant's finances prior to filing the citation. . . . Defendant did not have an opportunity to question anyone [at trial] as to what the bank knew." Defendant's Post-Trial Brief at 4.

Meanwhile, the Bank made no arguments regarding whether Sanfratello impliedly consented to a trial on concealment. It pointed out nothing in the transcript that could have constituted implied consent to try a claim for concealment. In fact, the Bank did not mention Rule 15 at all in its post-trial brief; it just went ahead and amended the complaint. But by doing so, it begged the question of whether Sanfratello expressly or impliedly consented to trial of that issue.

During a colloquy with the court at the end of the trial, the Bank's counsel stated that in his "opening statement, within my first three words, was concealment. And I said concealment probably ten times during my opening." Tr. at 81, lines 12-15. Having reviewed the transcript, the court agrees that the Bank's attorney used the words "concealed" or "concealment" in his opening statement. He did so three times.

Three mentions of a word in an opening statement is not enough for the court to conclude that Sanfratello should have known that the evidence the Bank adduced in court would be focused on concealment rather than transfers. This is especially true since Sanfratello strongly

9

objected to the notion of amendment in his post-trial brief. Meanwhile, the Bank blithely filed an amended complaint without any argument about consent.

For all of the reasons stated above, the court finds that the issue of concealment was not tried by implied consent. Since it was not tried by implied consent, the Bank may not amend its complaint to conform to the evidence and to raise an unpleaded issue.

<u>Judgment Will be Entered for Sanfratello on Count I. The Court Will Dismiss Count II.</u>

Objections to discharge are construed strictly against the objecting creditor and liberally in favor of the debtor. See In re Kontrick, 295 F. 3rd 724, 736 (7th Cir. 2002), aff'd, Kontrick v. Ryan, 540 U.S. 443 (2004). According to the Federal Rules of Bankruptcy Procedure, "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Fed. R. Bankr. P. 4005. In the Seventh Circuit, the objecting creditor must establish grounds for denial of discharge by a preponderance of the evidence. In re Scott, 172 F. 3rd 959, 966–67 (7th Cir.1999).

Pursuant to 11 U.S.C. § 727(a)(2)(A):

(a) The court shall grant the debtor a discharge, unless-- . . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> > (A) property of the debtor, within one year before the date of the filing of the petition . . .

As discussed above, in Count I of the complaint the Bank sought denial of discharge on the grounds that Sanfratello <u>transferred property</u> with the intent to hinder, delay or defraud his creditors. The Bank argued after the close of evidence that "any transfers while under citation are a violation of 727." Tr. at 68, lines 4-5. The court then pointed out that the citation language only prohibits transfers of non-exempt property, and "there was no proof of what came in, what

10

was exempt." Id. at lines 15-16. After a brief colloquy, the Bank's counsel stated, "Okay, I'll give up the – I'll give up the transfer." Tr. at 69, lines 3-4. Therefore, judgment will be entered for Defendant Sanfratello on Count I as pled in the complaint.[2]

As for Count II, the Bank stated at the close of evidence that it would not seek denial of discharge pursuant to 11 U.S.C. § 727(a)(4). In its post-trial brief, the Bank stated that it voluntarily dismissed this claim. Although a plaintiff may of course voluntarily dismiss an action, Fed. R. Bankr. P. 7041 requires a notice of dismissal or a stipulation of dismissal if it is to be done without court order. Since neither a notice nor a stipulation is on the docket, the court will enter an order dismissing Count II.

Finally, although the court already concluded that the issue of concealment was not tried by implied consent, judgment would have been entered in favor of Sanfratello even if it had been properly tried.

To prevail on a claim under § 727(a)(2)(A) for concealment with intent to hinder, delay or defraud, the Bank must prove: (1) that Sanfratello concealed property; (2) belonging to the estate; (3) within one year of filing the petition; (4) with the intent to hinder, delay, or defraud a creditor.

The Bank devotes approximately half of its brief to arguing that Sanfratello concealed property when he missed court and did not timely produce financial documents. "Concealment . . . includes preventing discovery . . . or withholding knowledge or information required by law to be made known." Scott, 172 F. 3rd at 967 (quotation omitted). The disclosure requirements of a

---

[2] Despite stating at trial that it would give up the transfer claim, the Bank devoted several pages of its post-trial brief to this cause of action. Tellingly, when it stated on page 11 of the post-trial brief that "debtor did not claim any exemptions in state court," the Bank provided no citation to any testimony or exhibit. As the court noted at trial, there was no proof of what was exempt and what was not. While the burden to request an exemption during a citation proceeding rests on the judgment debtor, the burden of proof in this proceeding rests on the Bank. Without proof that Sanfratello claimed no exemptions, the Bank cannot prevail on a claim for transferring non-exempt property with intent to hinder, delay or defraud.

citation to discover assets can satisfy the "required by law to be made known" element of concealment. In re Marcus-Rehtmeyer, 784 F. 3rd 430, 442 (7th Cir. 2015).

In Marcus-Rehtmeyer, creditor Chivalry Consulting, Inc. sued Carol Marcus-Rehtmeyer and won a judgment of $168,331.59. Marcus-Rehtmeyer never paid, so Chivalry issued a citation to discover assets. As in the case before this court, there was a rider to the citation that required Marcus-Rehtmeyer to produce certain financial documents. She was slow to do so; over the next eight months, Chivalry brought two motions to compel and a rule to show cause. Marcus-Rehtmeyer filed for relief under the Bankruptcy Code on the day before the hearing on the rule to show cause.

Chivalry sought denial of Marcus-Rehtmeyer's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), arguing that she had concealed information during the citation proceedings that was later disclosed in the bankruptcy case. The bankruptcy court found – and the district court affirmed its judgment – that Marcus-Rehtmeyer's explanations were credible, and judgment was entered in her favor.

The Circuit affirmed the courts below as to Marcus-Rehtmeyer's confusion about the ownership of her home as well as stocks from a defunct company. But when it came to her failure to disclose employment income, the Circuit disagreed with the bankruptcy court's determination. The Marcus-Rehtmeyer panel "reversed the bankruptcy court's ruling, but not because we found clear error in the judge's factual findings. Rather, we held that the judge misunderstood the debtor's disclosure obligations under state law." In re Kempff, 847 F. 3rd 444, 451 (7th Cir. 2017). Those disclosure obligations included a "duty to disclose any payment she received from [her employer] whether she received it before or during the pendency of the

citation." Marcus-Rehtmeyer, 784 F. 3rd at 438. A person subject to a citation has "a continuing duty to disclose her assets up until the time that the citation [is] terminated." Id.

Even if the Bank is correct that Marcus-Rehtmeyer stands for the proposition that delays in the citation process can constitute concealment, it has not proved by a preponderance of the evidence that any such concealment was done with the intent to hinder or delay the Bank. "The exception to discharge in § 727(a)(2)(A) essentially consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay or defraud a creditor). The party seeking to bar discharge must prove that both these components were present during the one year before bankruptcy." Kontrick, 295 F. 3rd at 736 (quotations omitted) (emphasis in original).

The Bank need not prove that Sanfratello intended to defraud it, only that he intended to hinder or delay it. Smiley v. First Nat'l Bank of Belleville (Matter of Smiley), 864 F. 2nd 562, 568 (7th Cir. 1989). A debtor rarely provides direct evidence of an intent to hinder or delay his creditors. Matter of Snyder, 152 F. 3rd 596, 601 (7th Cir. 1998). Therefore, courts may look to all the surrounding circumstances of a case in order to make a determination as to whether such intent exists. Matter of Yonikus, 974 F. 2nd 901, 905-06 (7th Cir. 1992).

If a debtor takes steps to avoid the effect of a citation order while knowing that these steps would hinder or delay his creditor, a court may find that the required intent exists. See First State Bank of Bloomington v. Cannell (In re Cannell), 2013 WL 2467787, at *5-6 (Bankr. C.D. Ill. June 7, 2013), aff'd, 2014 WL 3725929 (C.D. Ill. July 28, 2014) (debtor – an attorney – intended to hinder or delay creditors when he admitted that he stopped banking in his own name in an effort to avoid having his assets frozen by a state court citation order, "and he knew that this would impede or postpone the Bank's collection efforts").

But failure to comply with a state court collection order does not <u>automatically</u> satisfy the intent standard of § 727(a)(2)(A). In re Granrath, 560 B.R. 515, 525 (Bankr. N.D. Ill. 2016). See also Grochocinski v. Campbell (In re Campbell), 475 B.R. 622, 636 (Bankr. N.D. Ill. 2012) (debtors were under no legal duty to accept service of process in citation proceedings, therefore alleging lack of cooperation was insufficient to support an inference of the intent required by § 727(a)(2)(A)). There must be more than indifference to the requirements of the citation order to find the required level of intent.

In this case, the evidence adduced at trial does not show a debtor who acted with the required level of intent to hinder, delay or defraud his creditors. There were eleven court hearings over an eighteen month period in the Will County citation matter. The evidence is not clear that Sanfratello received notice of the first hearing he missed – and in any event, his actions during 2015 do not matter for purposes of this analysis. Sanfratello filed for relief under the Bankruptcy Code on January 5, 2017, and "anything occurring" more than one year before the bankruptcy filing "is forgiven." Kontrick, 295 F. 3rd at 736 (quotation omitted).

As for the hearings in 2016 that Sanfratello missed, his attendance was not required at one where his attorney was present in court. Another was scheduled while he was in Arizona for work. Sanfratello missed only one court hearing during the year prior to his bankruptcy filing for which no explanation is provided.

While the Will County judge was ready to award sanctions toward the end of 2016, he also stated on the record that "[t]his is one of those situations that is going to probably take an evidentiary hearing as to his willfulness towards violating the order." It was not clear to the state court judge, without hearing directly from the Defendant as this court did, that Sanfratello's actions warranted an award of attorney's fees.

The judge had previously acknowledged that Sanfratello's business arrangements could present "extensive documentation issues, but I don't think Mr. Sanfratello has made much of an effort here to get through this." Not making much of an effort is a different state of mind from taking intentional steps to block a creditor's collection efforts. Indeed, when Sanfratello's attorney asked for time to review the facts before sanctions were awarded, the judge indicated that while he would sign the order that day, he was open to a motion to vacate once the attorney had spoken to his client.

The Bank argued at trial that Sanfratello dodged depositions, but the citation hearing had been open for over a year before a request for a deposition appears on the record. The Bank tried to get Sanfratello to admit at trial that it had been seeking a deposition since the citation proceeding began, but Sanfratello testified that he did not understand the question and had no idea what the Bank's attorney had been doing. Although Sanfratello failed to appear for his first deposition, his attorneys were not served with notice of that deposition. When notice of the second deposition was sent to his attorney, Sanfratello appeared.

Unlike debtors in other cases, there are no allegations that Sanfratello lied about his income, Marcus-Rehtmeyer, 784 F. 3rd 430, or directed proceeds to his wife's account rather than his own, American Eagle Bank v. Friedman (In re Friedman), 543 B.R. 833, 845-46 (Bankr. N.D. Ill. 2015), or closed a bank account to prevent his assets from being frozen, Cannell, 2014 WL 3725929. In the court's view, the facts of this case add up to a debtor who was distracted, who did not give the citation proceeding the attention it required, but whose actions do not demonstrate intent to hinder or delay.

Most importantly, this court had the opportunity to observe Sanfratello's demeanor and credibility under questioning. He did not appear evasive, but instead was honest even when it

hurt his case. For example, his own attorney asked whether he would have been prepared to answer questions at the Will County court hearing on December 10, 2015, if only opposing counsel had been present. Sanfratello bluntly replied, "No."

Having reviewed the record before the court, and heard Sanfratello's testimony, the court is left with the impression that Sanfratello may have been negligent about his responsibility to appear in court, but his indifference does not rise to the level required to find that he intended to hinder or delay the Bank. Denial of discharge is a drastic remedy reserved for truly pernicious debtors, see Stathopoulos v. Bostrom (In re Bostrom), 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002), aff'd, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003), and it will not be imposed here.

## CONCLUSION

For all of the reasons stated below, the oral motion to amend the complaint is denied. Judgment will be entered in favor of Defendant Joseph Sanfratello on Count I. The court will dismiss Count II.

ENTERED:

Date: June 1, 2018

PAMELA S. HOLLIS
United States Bankruptcy Judge